# FRIER LEVITT
ATTORNEYS AT LAW

Jonathan E. Levitt, Esq., NJ Attorney ID No. 038851995
84 Bloomfield Avenue
Pine Brook, NJ 07058
Telephone: (973) 618-1660
Attorney for Defendants Linden Care, LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DEBORAH FULLER & DAVID FULLER, | : | CIVIL ACTION |
| As Administrators Ad Prosequendum for the Estate | : | |
| Of SARAH A. FULLER, Deceased, and | : | |
| DEBORAH FULLER & DAVID FULLER, | : | |
| Individually | : | |
| | : | |
| | : | 2:17-cv-07877-ES-SCM |
| | : | |
| VIVIENNE MATALON, M.D., TLC | : | |
| HEALTHCARE 2, LLC, INSYS THERAPEUTICS | : | |
| INC., LINDEN CARE LLC, INC, JOHN KAPOOR | : | |
| MICHAEL BABICH, ALEC BURLKAKOFF, | : | **MEMORANDUM OF LAW IN** |
| JOHN DOE #1-10 (FICTITIOUS) | : | **SUPPORT OF NONPARTY LINDEN** |
| ABS CORPORATION #1-10 (FICTITIOUS) | : | **CARE, LLC'S MOTION TO QUASH** |
| I/J/S/A | : | **PLAINTIFFS' SUBOPENA** |

---

**MEMORANDUM OF LAW IN SUPPORT
OF NONPARTY LINDEN CARE, LLC'S
MOTION TO QUASH PLAINTIFFS' SUBPOENA DUCES TECUM**

---

On the Brief:

    Jonathan E. Levitt, Esq.

1

## PRELIMINARY STATEMENT

This Motion is filed on behalf of Non-Party Linden Care, LLC ("Linden Care"), in support of its Motion to Quash the Subpoena Duces Tecum ("Subpoena") issued by plaintiffs, Deborah Fuller and David Fuller, as Administrators Ad Prosequendum of the Estate of Sarah A. Fuller, Deceased (hereinafter, "Plaintiffs") and served upon nonparty, Linden Care.

Plaintiffs' Subpoena defies the Federal Rules of Civil Procedure in several ways and seeks, from nonparty Linden Care, an exorbitant and excessive amount of information, much of which is unrelated to the dispute between Plaintiffs and Defendants Insys Therapeutics, Vivienne Matalon, M.D., and TLC Healthcare 2, LLC, Insys Therapeutics Inc., Linden Care LLC, Inc., John Kapoor, Michael Babich, Alec Burlakoff, John Doe #1-10 (Fictitious), and ABC Corporation #1-10 (Fictitious) I/J/S/A ("Defendants"), and is, thus, wholly irrelevant.

Forcing Linden Care to comply with the demands of the Subpoena poses an undue burden on Linden Care, which is only exacerbated when the following unique factors are considered:

> (1) Linden Care is not a party to underlying litigation;
>
> (2) Linden Care was once a party to the underlying litigation, but settled with Plaintiffs for a sum of $750,000 and was, as a result, released as a party from the underlying litigation;
>
> (3) Linden Care has been forced to discontinue operations and, therefore, is no longer equipped with staff to pull, sift, sort, and analyze documents that may be responsive to the Subpoena, nor does it have funds to support the document collection and analysis required to respond to the Subpoena; and
>
> (4) Many of the Subpoena's document demands request documentation which is also in the knowledge and possession of entities and individuals who are Defendants to the

case[1] (as opposed to Linden Care, a nonparty). As such, Linden Care submits that these Defendant entities and individuals are far more appropriately situated to respond to the Subpoena's document demands contained within the Subpoena.

Further, the Subpoena served upon Linden Care is not proportional to the needs of the case and its benefit is far outweighed by both the burden and expense of the proposed discovery. Moreover, the Subpoena seeks documents relating to Linden Care's confidential trade secrets, business information, and strategies. Plaintiffs must not be permitted to demand and obtain documents that fall into the categories of information listed above and, as such, the Subpoena should be quashed or modified by the Court.

---

[1] Defendants to the case who are more appropriately suited to respond to same include Defendants Insys Therapeutics, Vivienne Matalon, M.D., and TLC Healthcare 2, LLC.

**STATEMENT OF FACTS**

1. Plaintiffs Deborah Fuller and David Fullers are individuals residing at 47 West Temple Avenue, Stratford, New Jersey, 08084, who have filed the above-referenced complaint as Administrators Ad Prosequendum for the estate of Sarah A. Fuller, deceased ("Plaintiffs").

2. Decedent, Sarah Fuller, passed away on March 25, 2016.

3. Defendant, Insys Therapeutics, Inc. is a Delaware corporation with its principal place of business at 444 South Ellis Street, Chandler, Arizona 85244.

4. Defendant, Vivienne Matalon, M.D., was a New Jersey-licensed physician who practiced medicine at TLC Healthcare 2, LLC, located at 2070 Springdale Road, Cherry Hill, NJ 08034. Dr. Matalon's medical license was revoked in or around May, 2018, after being temporarily suspended several months prior.

5. Defendant, TLC Healthcare 2, LLC, is a New Jersey limited liability company.

6. Non-Party Linden Care, Inc. was a pharmacy existing and operating under the laws of the State of New York with its principal place of business located in the State of New York, permitted to dispense medications into New Jersey via an out-of-state pharmacy license.

7. On March 23, 2017, Plaintiffs filed a complaint in state court listing the following as defendants to the action: Vivienne Matalon, M.D., TLC Healthcare 2, LLC, Insys Therapeutics Inc., Linden Care, LLC, John Kapoor, Michael Babich, Alec Burlakoff, John Doe #1-10 (Fictitious), and ABC Corporation #1-10 (Fictitious).

8. On July 26, 2017, Linden Care ceased dispensing operations; Linden Care is no longer operational. See Declaration of Linden Care, LLC in Support of Linden Care's Motion to Quash Plaintiffs' Subpoena ¶ 3.

9. A Settlement Agreement was executed on February 6, 2018, whereby Plaintiffs released Linden Care, LLC; American Casualty Company and any CNA Entity; Arch Insurance Company; and

4

their heirs, estates, executors, successors in interest (and so on and so forth) from liability relating to the dispensing of Subsys and/or any other conduct related to Sarah Fuller by Linden Care (the "Settlement Agreement"). The Settlement Agreement states, "The RELEASORS and RELEASED PARTIES have agreed to settle in order to avoid the inconvenience, distractions, and inherent uncertainties associated with any legal proceeding, and the additional legal fees and expenses of continuing this dispute." See Declaration of Linden Care, LLC in Support of Linden Care's Motion to Quash Plaintiffs' Subpoena ¶ 4; Exhibit C to Certification in Support of Motion to Quash Plaintiffs' Subpoena.

10. A Stipulation of Dismissal With Prejudice dated March 12, 2018 was filed with the Court, dismissing Linden Care, LLC with prejudice and without cost from Case number 2:17-CV-07877.

11. On June 6, 2018, a Subpoena was served upon Linden Care by Plaintiffs (the "Subpoena"). The Subpoena related to case number 2:17-cv-07877, to which Linden Care was no longer a party. See Exhibit B to Certification in Support of Motion to Quash Plaintiffs' Subpoena.

12. On June 12, 2018, Plaintiffs filed an amended complaint in the action captioned 2:17-CV-07877 naming as defendants Vivienne Matalon, M.D., TLC Healthcare 2, LLC, Insys Therapeutics Inc., Linden Care, LLC, John Kapoor, Michael Babich, Alec Burlakoff, John Doe #1-10 (Fictitious), and ABC Corporation #1-10 (Fictitious) I/J/S/A (the "Amended Complaint"). Though Linden Care is listed as a defendant in the Amended Complaint's caption, it is not listed as a defendant in the body of the Amended Complaint. The collection of complaints filed in this case shall hereinafter be defined as the "Underlying Litigation".

13. This Motion to Quash is filed on September 14, 2018, which is timely pursuant to Toole v. Cordovani, 2014 WL 132002 (D.N.J. 2014).

## Legal Argument

### Point One

**THE SUBPOENA MUST BE QUASHED BECAUSE IT IS
OVERLY BROAD, INTRUSIVE AND IRRELEVANT
TO THE PARTIES' CLAIMS AND IMPOSES
AN UNDUE BURDEN ON A NON-PARTY
WHICH IS NO LONGER OPERATIONAL**

Plaintiffs have issued a subpoena to a non-party seeking documents, most of which are entirely irrelevant to the dispute between Plaintiffs and Defendants. Furthermore, Plaintiffs improperly seek to obtain confidential business information from Linden Care. Further, Plaintiffs' Subpoena poses an undue burden on Linden Care and, as such, should be quashed or modified by the Court.

We will note at the outset that the Subpoena does indeed seek some material that is both relevant to the Underlying Litigation (notably, in the form of patient records), which Linden Care has produced to Plaintiffs.

**A. Plaintiffs' Subpoena Imposes an Undue Burden Because It Seeks Related Litigation Extensive Information from an Insolvent Non-Party to the Related Litigation That is Beyond the Scope of the Issues Involved in the Litigation.**

It is established that, upon a timely motion, the Court by which a subpoena was issued shall quash or modify a subpoena if it subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3). "A subpoena is considered unduly burdensome when the Court finds that it 'is unreasonable or oppressive'" OMS Investments, Inc. v. Lebanon Seaboard Corp., 2008 WL 4952445, at *2–3 (D.N.J. Nov. 18, 2008) (quoting DIRECTV, Inc. v. Richards, 2005 WL 1514187 at *1 (D.N.J. 2005)); see also Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C.Cir.1984).

There is no hard and fast rule which dictates whether a subpoena is unreasonable or oppressive and whether it, therefore, presents an undue burden on its recipient. *See* OMS Investments, Inc. v. Lebanon Seaboard Corp., 2008 WL 4952445, at *3 (D.N.J. Nov. 18, 2008) (citing In re Auto. Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 495 (E.D.Pa.2005)). Rather, whether a subpoena is

unreasonable or oppressive is determined by the Court on a case-by-case basis. *Id.* In the past, the following factors have been considered by Courts when determining whether a subpoena is reasonable: "(1) the party's need for the production; (2) the nature and importance of the litigation; (3) relevance; (4) the breadth of the request for the production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed entity." *Id.;* 9 Moore's Federal Practice at ¶ 45.32 (3d ed. 2006); Further, it is well-settled that, as a general rule, courts "afford[] non-parties greater protection from discovery than a normal party." Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P., 2016 WL 7107879, at *2 (V.I. Super. Nov. 30, 2016) (citing Stamy v. Packer, 138 F.R.D. 412, 419-20 (D.N.J. 1990).

We consider each of the factors relevant to our argument below, in turn.

**1)  The Burden Imposed on the Subpoenaed Entity**

We address first factor (7) – the burden imposed on the subpoenaed entity – and submit that, in light of Linden Care having settled out of the matter and its current status as a totally defunct entity, this factor weighs heavily in favor of quashing or modifying the subpoena.

a)  <u>Linden Care Has Settled Out of This Matter</u>

Plaintiffs' lawsuit originally named Linden Care as a Defendant in its March 23, 2017 action. Linden Care settled its liability relating to this matter (the "Settlement") for Seven Hundred Fifty Thousand and 00/100 ($750,000.00) Dollars, which Settlement was memorialized via an agreement dated February 6, 2018 (the "Settlement Agreement"). In contemplation of this Settlement, Linden Care worked with its insurance counsel who, on Linden Care's behalf, negotiated the terms and amount of the Settlement with Plaintiffs.

Indeed, part of Linden Care's decision to settle the matter for the aforementioned amount, rather than to proceed with threatened litigation, was its anticipation that it would not need to go through the time consuming and costly exercise of discovery, including responding to a discovery demands

relating to the Underlying Litigation. To be sure, the Settlement Agreement specifically states, "[t]he Releasors and Released Parties have agreed to settle in order to avoid the inconvenience, distractions, and inherent uncertainties associated with…the additional legal fees and expenses of continuing this dispute." It is simply not equitable to, months after Linden Care's time and resources was expended negotiating the Settlement and then following the payment of the Settlement amounts, cause Linden Care to undergo such expense related to producing extensive documents related **– and unrelated –** to the Underlying Litigation. Further, while Linden Care still has insurance policies in effect, Linden Care has been advised that any further work performed by insurance counsel related to this matter would be "outside of coverage" and would require a direct payment under a separate retainer.

Indeed, it is evident from the plain language of the Settlement Agreement that the Parties thereto *intended* for it to release Linden Care from any and all hassles associated with the lawsuit; this language should be enforced. Further to this point, the Parties easily could have included a clause wherein Linden Care agreed to continue to cooperate with the litigation, but they clearly chose not to. As such, forcing Linden Care to comply with the Subpoena would subject it to an undue burden.

b)  Linden Care Is No Longer Operational

Additionally, on July 26, 2017, Linden Care ceased dispensing operations. This means it no longer generates revenue and no longer has employees to pull material for day to day operations, much less to respond to discovery requests related to litigation to which Linden Care is not even a party. This is, again, extremely relevant, given that any work done by counsel in response to the Subpoena would be outside the scope of coverage and would require direct payment under a separate retainer. The documentation requested in the Subpoena (save the decedent's patient file) is far more easily obtained by other entities who are equipped with the resources and staff able to pull these records. Moreover, in more than a few instances, **those other entities are actually parties to the Underlying Litigation** and, as such, are far more appropriate targets of these discovery demands.

    c) Linden Care is Afforded Extra Protection In Light of its Status as a Non-Party

As stated, Linden Care is no longer a party to the litigation, which non-party status is relevant, as courts generally afford non-parties more protection from discovery than parties thereto. See Stamy, 138 F.R.D. at 419. For example, the Court is obligated to, **especially in instances in which discovery is sought from a non-party**, "…limit the … extent of discovery where it is duplicative, where it can be obtained from another source that is 'more convenient, less burdensome, or less expensive,' where the party seeking discovery has had ample opportunity to obtain the discovery, or where the burden or expense outweighs any perceived benefit of the discovery." Frank v. Honeywell Int'l Inc., 2015 WL 4770965, at *4 (E.D.Pa. 2015) (collecting cases) (Citing Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii)).

The Subpoena requests are duplicative, and Linden Care should be afforded protection from being forced to respond to those requests. To be sure, the Subpoena requests documents which are also in the knowledge and possession of Insys Therapeutics, Vivienne Matalon, M.D., and TLC Healthcare 2, LLC, who are defendants to the Underlying Litigation. *See, for example,* Subpoena's Specifications 5, 6, 8, 17, 21. As solvent parties to the Underlying Litigation, those discovery requests are more appropriately directed to the aforementioned parties. Further, the Subpoena's Specifications 9 and 29 seek documentation which is within the knowledge and possession of entities, such as BelHealth Investment Partners and the TIRF REMS program, who, though they are not parties to the litigation, are still solvent and operational (complete with incoming revenue and staff) such that those entities are better suited to provide the documentation requested in the Subpoena.

In addition, Linden Care's response to this very broad Subpoena would require that Linden Care sift, sort, and analyze for responsiveness and privilege hundreds of thousands of documents to determine whether they must be and can be provided to Plaintiffs in order to comply with the Subpoena. "Motions to quash a subpoena served upon a non-party have been granted where

compliance would require extensive sifting and analysis by the non-party, especially where the requests for documents were sweeping in nature, covering every paper on any transaction between a party and the person subpoenaed." Gourmet Gallery Crown Bay , 2016 WL 7107879, at *2 (V.I. Super. 2016). The document requests are indeed sweeping in nature. See, for example, Specification 5, which requests, "[a]ny and all correspondence and communications between any and all Linden Care, LLC's employees *and* Insys Therapeutics, Inc., regarding its dispensing of Subsys for Insys. This demand includes, but is not limited to, emails, google hangout instant messages, or any other type or form of communications," which requires Linden Care's analysis of tens, if not hundreds, of thousands of emails.

Linden Care submits that this protective principle applies with even greater force in instances in which (a) the subpoenaed party has already paid a substantial sum of money to a party who issued the subpoena to settle out of the matter; (b) there are still parties to the litigation who have within their knowledge and possession documentation identical to that requested of the nonparty; and (c) the subpoenaed party is not operational and has no incoming revenue or staff to effectuate compliance with the subpoena. All of these factors are present in this instance.

The above indicates that the Subpoena is unreasonable and oppressive and, as such, should be modified or quashed.

**2) The party's need for the production.**

Plaintiffs cannot articulate need for the vast majority of the information sought in the Subpoena, most relevantly, for that information which is sought from Linden Care is also in the possession of other parties to the Underlying Litigation. To be sure, "[n]eed is enhanced when information is uniquely available from the party from whom it is sought. The corollary is that need is diminished when the information is available elsewhere." Avago Technologies U.S., Inc. v. IPtronics Inc., 309

10

F.R.D. 294, 299–300 (E.D.Pa., 2015) (quoting American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 743 (Fed. Cir. 1987)).

As articulated above, much of the information requested by the Subpoena is available from sources other than Linden Care, including from entities which are currently listed as Defendants to the action, and, as such, are more appropriate parties to be subpoenaed in this litigation. For example, the Subpoena requests communications between Linden Care and Insys, Dr. Matalon, and TLC Healthcare 2, LLC, the latter three of which are each parties to the litigation, who should have knowledge and possession of records identical to those sought from Linden Care as those records relate to the relevant specifications. Simply stated, the information is available elsewhere, and from more appropriate parties. As such, Plaintiffs cannot demonstrate a need for much of the material requested by the Subpoena, indicating that the Subpoena is unreasonable and oppressive and should be quashed or modified.

**3) The nature and importance of the litigation**

Nothing herein shall be construed to, in any way, limit the nature or import of this litigation. However, the information relevant to this case is readily obtainable from other sources and, as such, weighs in favor of the subpoena being found to be unreasonable and oppressive and, as such, should be quashed or modified by the Court.

**4) Relevance**

Much of what was requested by the Subpoena is simply not relevant to the Underlying Litigation, weighing in favor of the Subpoena being unreasonable and oppressive, indicating that it should be quashed or modified.

"Under new Rule 26(b), relevance remains the touchstone of discoverability—information remains discoverable if it is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (2015). However, the concept of proportionality has been moved up from its former position in section (b)(2)

and is now incorporated into section (b)(1).**"** https://www.americanbar.org/content/dam/aba/events/labor_law/2017/03/err/papers/discovery_stricter_requirements.authcheckdam.pdf. The amendments to the discovery rule, which took place on December 21, 2015, "…reflect a continuing effort to limit the cost and scope of discovery, and to prevent, as the Advisory Committee calls it, "over-discovery" and "discovery overuse."" https://www.americanbar.org/content/dam/aba/events/labor_law/2017/03/err/papers/discovery_stricter_requirements.authcheckdam.pdf.

As such, the scope of discovery under 26(b)(1) is now as follows:

> [P]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense **and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information**, **the parties' resources**, **the importance of the discovery in resolving the issues**, **and whether the burden or expense of the proposed discovery outweighs its likely benefits**. Information within this scope of discovery need not be admissible in evidence to be discoverable.

https://www.americanbar.org/content/dam/aba/events/labor_law/2017/03/err/papers/discovery_stricter_requirements.authcheckdam.pdf. [emphasis added].

Simply stated, much of the information sought in the Subpoena is not relevant; it does not relate to any party's claim or defense. Moreover, the vast majority of the documents are simply not discoverable under 26(b)(1) because it seeks information that is entirely ***disproportionate***, considering the parties' relative access to that information, the parties' resources and the tremendous (and unnecessary) financial burden it will place on Linden Care to comply with the Subpoena. As

12

stated above, Linden Care is no longer operational and, as such, does not have funds or staff dedicated to responding to discovery requests, which bears upon its access to the information sought; resources to pull, sort, and sift this information; and the burden of complying with the Subpoena as referenced above.

Further, as Linden Care is no longer a party to the case, certain theories of liability which explore the structure, workings, inner dealings, or liability of Linden Care are simply no longer relevant to the case at hand, even if they would have been had Linden Care been a party to the Underlying Litigation (i.e., the importance of discovery in resolving the issues is far diminished). For example, the Subpoena requests (a) documents pertaining to Linden Care's organizational structure; (b) Linden Care's reporting structure; (c) incorporation documents; (d) documents relating to the acquisition of Linden Care by BelHealth; and (e) personnel files for its employees (Specifications 1 through 3, 19, 21-28) even though Linden Care, its parent companies, employees, owners, directors, members, managers, and the like have been released from the case pursuant to the Settlement Agreement. Further, the Subpoena requests information relating to insurance policies/agreements pertaining to Linden Care's professional liability coverage and directors' and officers' errors and omissions, including, but not limited to, the complete insurance contacts and coverage. Specification 30. Linden Care should not be forced to respond to a discovery demand which requests information pertaining to the liability of individuals and entities which have already been released and, perhaps more importantly, which bear no logical relationship to the claims at issue. Such information is simply not relevant to the Underlying Litigation.

Moreover, "…it should be noted that the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." In re Centrix Fin., LLC, 2012 WL 6625920, at *6 (D.N.J. 2012) (quoting Laxalt v. McClatchy, 116 F.R.D. 455, 458 (D.Nev. 1986); Stamy v. Packer, 138 F.R.D. 412, 419 (D.N.J. 1990). This means that even items which may be tangentially related to

13

the Underlying Litigation should be scrutinized more heavily for relevance to the Underlying Litigation's claims given Linden Care's non-party status. This principle further suggests that many of the documents requested in the Subpoena are more appropriately directed towards parties, where the relevance bar is, comparatively, lower.

As such, the Subpoena, which requests an overwhelming amount of irrelevant information, is unreasonable and oppressive and should be quashed or modified.

5) **The Breadth of the request for the production**

The Subpoena as a whole requests extensive correspondence, reports, and documents for a more-than-six-year time period through 30 separate document demands. To respond to the Subpoena requires that Linden Care sift through hundreds of thousands of emails, as well as an undetermined number of documents. This indicates that the Subpoena is unreasonable and oppressive and should be quashed or modified.

6) **The time period covered by the request**

The Subpoena as a whole requests extensive correspondence, reports, and documents for a more-than-six-year time period. This indicates that the Subpoena is unreasonable and oppressive and should be quashed or modified.

7) **The particularity with which documents are described**

In many instances, the document requests in the Subpoena lack specificity, indicating that the Subpoena is unreasonable and oppressive and should be quashed or modified. For example, Specification 18 requests "[a]ny and all documentation which relates in any way to the Linden Care, LLC's 'specialty services' including but not limited to the Pharmacy Benefit Coordination, prior authorization and/or access to manufacturer Co-Pay Assistance Programs and/or voucher programs." Linden Care is unable to determine, from the language of this specification, which documents are being requested. However, any such request would require an extensive and heavy

overhaul in reviewing tens (if not hundreds) of thousands of documents in order to secure this. At an absolute minimum, such open-ended and overbroad requests must be substantially narrowed.

When considering these seven factors together, it is clear that the Subpoena is unreasonable and oppressive and presents an undue burden upon Linden Care. As such, the Subpoena should be quashed or modified.

**B. Plaintiff's Subpoena Issued to Non-Party Linden Care Also Seeks Confidential Trade Secrets, Proprietary Information, and Other Confidential Commercial Information and, as Such, Should Be Quashed.**

In addition to the fact that Plaintiffs' Subpoena poses an undue burden on Linden Care by improperly seeking extensive amounts of information from an insolvent settling non-party, which documents are more easily obtained by another party, or which are simply not relevant to the Underlying Litigation, Plaintiffs' Subpoena also improperly seeks information protected from disclosure under Fed. R. Civ. P. 45(d)(B), where compliance would require disclosure of "a trade secret or other confidential research, development, or commercial information[.]" Because Federal Rule of Civil Procedure 45 permits a court to quash a subpoena for several reasons including when compliance with a subpoena would require disclosure of confidential information under Rule 45(d)(3)(B). Aetrex Worldwide, Inc. v. Burten Distribution, Inc., 2014 WL 7073466, at *6 (D.N.J. 2014), the Subpoena should be quashed or modified by the Court.

The Subpoena requests, for example, handbooks, guidelines, protocols, and manuals (Specifications 11 and 12); documents relating to vouchers, coupons, free samples, and/or financial assistance (Specification 14); sale and revenue volume (Specifications 15 and 16, respectively); employment files and, in certain instances, applications for employment (Specifications 20, and 22 through 28), as follows:

    a) Any and all written and/or electronic manuals, guidelines, protocols or requirements regarding compliance with the Controlled Substance Act and New Jersey Regulations for Linden Care

15

LLC, Inc's company's filling and dispensing prescriptions for Schedule II controlled substances for the years 2012-2016.

b) Any and all training manuals, policy manuals, best policy procedures, corporate guidelines, internal documents, employment handbooks, employee guidelines, company policies, instructions and/or memorandum provided to Linden Care LLC, Inc's employees, third party personnel, and/or management regarding corporate compliance with the TIRF-REMS program.

c) True and complete copies of any and all documents relating to and/or pertaining to vouchers, coupons, free samples, and/or any other type of financial assistance provided by Insys Therapeutics, Inc., and/or Linden Care LLC, to any customer/patient receiving Subsys from January 1, 2012 to the present time, including but not limited to the vouchers themselves. (Any patients name other than Sarah A. Fuller may be redacted).

d) Records showing the total amount of annual Subsys prescriptions filled by Linden Care for each year from January 1, 2012 to the present time (year to date if not complete). The names of any patient other than Sarah A. Fuller may be redacted).

e) A copy of Linden Care's sales reports and/or other documents showing revenues generated from dispensing of Subsys for each year from January 1, 2012 to the present time (year to date if year not complete).

f) A complete copy of the employment and/or personnel file for Mindy Zornberg from time of application through last date of employment.

g) A complete copy of the employment and/or personnel file for Glen Bortnick from application and/or commencement of employment at Linden Care through last date of employment.

h) A complete copy of the employment and/or personnel file for Mark Bortnick from application and/or commencement of employment at Linden Care through last date of employment.

i) A complete copy of the employment and/or personnel file for Hunter Plotsker from time of application and/or commencement of employment through last date of employment.

j) A complete copy of the employment and/or personnel file for Jordan Fogel from time of application and/or commencement of employment through last date of employment.

k) A complete copy of the employment and/or personnel file for Mark Schmier from time of application and/or commencement of employment through last date of employment.

l) A complete copy of the employment and/or personnel file for Mark Vogel from time of application and/or commencement of employment through last date of employment.

m) A complete copy of the employment and/or personnel file for Al Lopez from time of application and/or commencement of employment through last date of employment.

In addition to being wholly irrelevant to the Underlying Litigation and presenting an undue burden on Linden Care, these requests can be broadly categorized as falling under Rule 45 "trade secrets or other confidential research, development, or confidential information[.]" There is no basis for Plaintiffs' Subpoenaing of this information from Linden Care and there is no valid reason why Plaintiff is entitled to obtain information that was critical to the operation and functionality of Linden Care and for which Linden Care had worked diligently to obtain.

Accordingly, Linden Care's Motion should be granted and Plaintiffs' subpoena quashed. Much of the information requested in the Subpoena falls into this category.

## Conclusion

For the reasons set forth within, insolvent non-party Linden Care respectfully requests that this Court grant its Motion and quash Plaintiffs' Subpoena and for such other relief as this Court deems just and proper.

Respectfully Submitted,

**FRIER & LEVITT, LLC**


By: /s/ *Jonathan E. Levitt*
Jonathan E. Levitt, Esq.
Kendra E. Pannitti, Esq.
84 Bloomfield Avenue
Pine Brook, NJ 07058
(973) 618-1660
(973) 618-0650
jlevitt@frierlevitt.com
kpannitti@frierlevitt.com
Attorneys for Non-Party
Linden Care, LLC

Dated: September 14, 2018